IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3072-FL

| | | |
|---|---|---|
| GEORGE ALBERT HOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TRACY W. JOHNS, ANDRES | ) | |
| HERNDANDEZ, KAREN STEINOUR, | ) | |
| FREDDIE GARRIDO, ANDREA TAYLOR, | ) | |
| NICOLE WEAVER, BRUCE BELL, JORGE | ) | |
| FERNDANDEZ, CHRISTOPHER SMITH, | ) | |
| and RONNIE RUFFIN, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on the second motion to dismiss, or in the alterative,

motion for summary judgment (DE 44) pursuant to Federal Rule of Civil Procedure 56(a),[1] filed by

filed by defendants Lieutenant Bruce Bell ("Bell"), Lieutenant Jorge Fernandez ("Fernandez"),

Freddie Garrido ("Garrido"), Andres Hernandez ("Hernandez"), Officer Ronnie Ruffin ("Ruffin"),

Officer Christopher Smith ("Smith"), Karen Steinour ("Steinour"), Andrea Taylor ("Taylor"), and

Unit Manager Nicole Weaver ("Weaver").[2] The issues raised were fully briefed, and the matter is

ripe for adjudication. For the following reasons, the court grants defendants' motion.

---

[1] Because defendants attached documents that are outside of the pleadings, the court construes their motion as a motion for summary judgment.

[2] The court dismissed previously-named defendant Hale in its September 5, 2012, order. Accordingly, the court constructively amends the caption to reflect the termination of this defendant. Also in its September 5, 2012, order, the court dismissed plaintiff's claims against defendant Tracy W. Johns, with the exception of plaintiff's claim regarding mail censorship procedures. The court allowed plaintiff the opportunity to particularize this claim against defendant Johns, but plaintiff failed to do so. While defendant Johns does not join in the remaining defendants' motion for summary judgment, the court addresses separately herein claims against defendant Johns.

## STATEMENT OF THE CASE

On April 14, 2011, plaintiff, then a civil detainee, awaiting a hearing on the government's petition for his commitment pursuant to 18 U.S.C. § 4248, filed this action pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). At the time he filed this action, plaintiff was housed in the Maryland unit at the Federal Correctional Complex in Butner, North Carolina ("Butner"). Plaintiff alleges the following claims arising out of his incarceration at the Maryland unit: (1) deliberate indifference to his serious medical needs; (2) unlawful confiscation of, and failure to return, property and failure to provide a confiscation form; (3) commingling with sentenced inmates; (4) censoring of mail; and (5) unlawful conditions in segregation. On April 22, 2011, the court dismissed the § 4248 petition for certification filed against plaintiff, and plaintiff was released from the Bureau of Prison's custody. <u>United States v. Hood</u>, 5:07-HC-2152-FL (E.D.N.C. Apr. 22, 2011).

On October 3, 2011, defendants filed a motion to dismiss or for summary judgment, arguing that plaintiff's action should be dismissed because he failed to exhaust his administrative remedies prior to filing this action. Alternatively, defendants argued that plaintiff's claim should be dismissed for failure to state a claim upon which relief may be granted. The issues raised were fully briefed.

On September 5, 2012, the court entered an order denying defendants' motion as to the exhaustion issue. The court granted defendants' motion as to the following claims: (1) all claims against previously-dismissed defendant Hale; (2) plaintiff's claims regarding commingling of civil detainees with convicted inmates; and (3) plaintiff's claim for deliberate indifference to serious medical needs against defendant Steinour and defendant Hernandez for failure to treat plaintiff's spider bite. The court denied defendants' motion to dismiss or for summary judgment as to the

following claims: (1) defendant Smith and defendant Taylor failed to provide him with a wheelchair after his knee surgery; (2) defendant Garrido refused to provide him treatment for his Hepatitis C; and (3) plaintiff's property deprivation claims. Finally, the court allowed plaintiff the opportunity to particularize his Fifth Amendment claim for failure to treat his broken wrist or rib, his mail censoring claim, and his segregation-related claims.

On October 24, 2012, plaintiff responded to the court's order directing him to particularize his complaint. The court subsequently allowed plaintiff to proceed with the following additional two claims: (1) deprivation of property in violation of the Fifth Amendment; and (2) unconstitutional conditions of confinement while in segregation in violation of the Fifth Amendment to the United States Constitution.[3]

On May 1, 2013, defendants filed a second motion to dismiss or for summary judgment, which the court construes as a motion for summary judgment, arguing that plaintiff is unable to establish a constitutional violation. In support of their motion for summary judgment, defendants Taylor, Garrido, Steinour, Hernandez, as well as non-party Jerman Panter submitted affidavits. In opposition to summary judgment, plaintiff relies upon the evidence attached to his complaint and the declaration he submitted in response to defendants' motion for summary judgment.

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts may be summarized as follows. Plaintiff arrived at FCI Butner on August 17, 2007, the date he was certified as a sexually dangerous person pursuant to § 4248.

---

[3] As noted above, however, plaintiff failed to particularize his mail censoring claim or his Fifth Amendment claim pertaining to the care for his broken wrist or rib. Because plaintiff failed to comply with the court's September 5, 2012, order to particularize these claims, these claims are DISMISSED without prejudice. As the mail censorship claim was the sole remaining claim against defendant Johns, defendant Johns no longer is a party to this action.

(Garrido Decl. ¶ 4; Hernandez Decl. ¶ 7; Steinour Decl. ¶ 5.)  Plaintiff was detained in FCI Butner's Maryland unit as part of the Federal Bureau of Prisons' ("BOP") Commitment and Treatment Program ("CTP").  (Id.)  The CTP provides treatment services to individuals who have completed their criminal sentences and have been certified or civilly committed as sexually dangerous persons under § 4248.  See 18 U.S.C. § 4248; (Steinour Decl. ¶ 2; Hernandez Decl. ¶ 2.)  An individual remains in the CTP for custody, care, and treatment under § 4248 until either a state assumes the responsibility for the detainee, the individual is considered no longer sexually dangerous to others, or the individual's risk will be sufficiently mitigated if released under a prescribed regimen of care or treatment.  (See id.)

The CPT is comprised of a clinical services component, which provides psychological treatment to CTP inmates, and a forensic evaluation services component, which conducts forensic sex offender evaluations and related reports for the BOP and courts.  (Hernandez Decl. ¶¶ 3-4.)  Defendant Hernandez supervises the clinical services component of the CTP.  (Id.)  The court now addresses the facts as they relate to plaintiff's individual claims in turn.

The undisputed facts as they relate to plaintiff's alleged confiscation of property may be summarized as follows.  On November 18, 2010, defendant Ruffin confiscated seventeen (17) of plaintiff's magazines, including twelve (12) American Curves magazines and five Heavy Metal magazines.  (Compl. Ex. E.)  Plaintiff wrote a letter to defendant Steinour stating that defendant Ruffin provided him with an "improperly filled out confiscation and disposition form on November 18, 2010."  (Id. Ex. F.)  Plaintiff's letter states that "Ms. Baker" took the magazines to her office.[4]

---

[4] The back side of the confiscation and disposition of contraband form contains a hand written note stating: "Officer gave property to Ms. Baker."  (Compl. Ex. F.)

4

(Id.)  In response, defendant Steinour advised plaintiff to contact the property officer in the Lieutenant's Office with regard to any confiscated property which might have been forwarded to defendant Steinour because Steinour would have forwarded such property to the Lieutenant's Office for disposition.  (Id.)  Plaintiff attached two notices from prison officials that at least one issue of Heavy Metal magazine was returned to the publisher in accordance with BOP policy because it contained "material which is sexually explicit or featur[ing] nudity."  Compl. Exs A, B[5]; Incoming Publications, BOP Program Statement § 5266.10.

The court now sets forth the facts relating to plaintiff's allegation that the heat stopped functioning while he was in the segregation unit from December 23, 2010, through January 3, 2010. At some point in December 2010, defendant Steinour became aware that there was a heating problem in the Maryland Unit Annex ("Annex"),[6] where plaintiff was confined in December 2010/January 2011.  (Steinour Aff. ¶ 6(c)).  Steinour asked staff member, Kim Barnes, to notify the Facilities Department[7] of the problem, and Kim Barnes complied.  (Id.)

BOP records reflect that on December 8, 2010, Heating and Ventilation and Air Conditioning ("HVAC") foreman Jerman Paynter was notified that there was a problem with a lack of heat in the Annex.  (Paynter Aff. ¶ 10.)  In response, Paynter adjusted both thermostats in the Annex by setting

---

[5]  Plaintiff attached two notices from prison officials that at least one issue of "Heavy Metal" magazine and one issue of "Curves" magazine were returned to the publisher in accordance with BOP policy because it contained "material sexually explicit or featur[ing] nudity."  Compl. Exs A, B; Incoming Publications, BOP Program Statement § 5266.10.  Although the notice with respect to the "Curves" magazine is undated, plaintiff was notified that the "Heavy Metal" magazine was returned on November 23, 2009. (Id. Ex. B.)

[6]  The Annex is a multi-purpose inmate housing area next to, but separate from, the Maryland Unit. (Hernandez Aff. ¶ 8(b), 8(c)).

[7]  The Facilities Department is responsible for maintaining the buildings, including the heating system, at FCI Butner.  (Steinour Aff. ¶ 6(c)).

5

them to the thermostat heating ("HTG")[8] on mode. (Id. and Attach. 2.) Paynter then remained in

the Annex until the temperature remained around seventy-one (71) degrees Fahrenheit to ensure that

the system was working properly. (Id.) The hot water and hot water pump had been turned on the

previous day by another HVAC employee. (Id. and Attach. 1.) Non-facilities staff do not have

direct access or authorization to adjust the thermostats in the Annex. (Id. ¶ 5.) Nor do non-facilities

staff have authorization to make any alterations, repairs, or changes to HVAC equipment at the

institution. Id. Rather, HVAC staff are responsible for such repairs. (Id.)

The court now turns to the facts relating to plaintiff's provision of a wheelchair following

his 2010 knee surgery. Plaintiff states that following his knee surgery, a surgeon informed him that

he would be provided a wheelchair. (Pl.'s Decl. (DE 52) p. 2.) Plaintiff further states that, upon

returning to the Maryland unit, defendants Taylor and Smith incorrectly informed plaintiff that he

had not been approved for a wheelchair. (Id.) Plaintiff alleged in his complaint that he did not eat

for several days thereafter because it was too painful for him to walk to the dining hall.

It is standard practice at FCI Butner that inmates first seek and obtain approval from medical

staff in order to receive special accommodations for medical equipment, such as wheelchairs,

directly from medical staff. (Taylor Aff. ¶ 4.) The unit team does not maintain wheelchairs to

assign inmates. (Id.) Inmates requesting assistance receiving special accommodations for medical

reasons for use of medical equipment ordinarily must provide the unit team written proof that such

accommodation or use of medical equipment have been authorized by medical staff. (Id.) Inmates

---

[8] Paynter states that during warmer periods when heat is not required in the Annex, the HTG for the
HVAC systems in the Annex is turned off. (Paynter Aff. ¶ 6.) The hot water that produces heat for these HVAC
systems and the water pump that circulates the hot water for the HVAC systems are also turned off during such
period. (Id.) During cont. from p. 5. . . cooler periods, when heat is required in the Annex, the hot water and water
pump for these HVAC systems must be turned on and the thermostats must be set to the HTG mode in order for the
systems to produce heat. (Id.)

at FCI Butner are encouraged to address medical-related concerns directly with medical staff by making an appointment to see a medical provider. (Id. ¶ 7.)

Finally, the court turns to the facts relating to plaintiff's confinement in segregation from December 29, 2010, through March 4, 2011.[9] Correctional Services staff placed plaintiff in disciplinary segregation for thirty (30) days, on November 6, 2010, following a disciplinary conviction for fighting with another inmate in his unit over control of the television. (Hernandez Aff. ¶ 8(c) and Attach. 1, p. 1.) Following plaintiff's completion of his initial thirty (30) day segregation period, he remained confined in the Annex, pending an appropriate placement, due to the persistent nature of his prior misconduct in the Maryland unit, particularly his monopolization of television viewing and fighting with other inmates on the Maryland unit. (Id. ¶ 8(c)(2) and Attach. 1.)

FCI Butner prison officials subsequently recommended that plaintiff be placed on a behavior modification plan ("BMP"). (Id. ¶ 8(c)(2).) A BMP is a non-punitive tool used in the CTP, which is designed to increase behavioral compliance with institutional rules and norms of conduct in inmates who have demonstrated disruptive and/or dangerous behavior that threatens the security or orderly running of the institution.[10] (Id. ¶ 4.) Plaintiff's BMP was completed on February 7, 2011, and implemented on February 9, 2011. (Id. ¶ 8(c)(2).) As part of his BMP, plaintiff initially was required to remain confined in the Annex for a minimum of two weeks, with access to outside recreation and the Annex day room. (Id. and Attach. 1.)

_____

[9] Plaintiff's entry of March 4, "2010" in his complaint appears to be a clerical error.

[10] A BMP generally is implemented after the BOP's inmate discipline process has proven to be minimally effective. (Id. ¶ 4.)

7

Defendant Hernandez explained the BMP to plaintiff and informed him that his participation in the BMP was voluntary, but that his release from the Annex to the Maryland unit would be gradual and contingent upon the conditions in the BMP. (Id. ¶ (c)(3).) Hernandez states that plaintiff was argumentative and reluctant to participate in the BMP, but that plaintiff ultimately agreed to participate. (Id.) Plaintiff's BMP subsequently was amended to adjust the date of his release from the Annex to March 4, 2011. (Id. ¶ (c)(4).) Pursuant to the amended BMP, plaintiff was released from the Annex to the Maryland unit on March 4, 2011, at which time he progressed to phase 2 of the BMP. (Id. ¶ (c)(4).) Plaintiff was released from BOP custody on April 22, 2011, following the dismissal of his § 4248 civil commitment proceedings. (Id.)

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.      Analysis

Defendants raise the defense of qualified immunity against plaintiff's <u>Bivens</u> action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."    <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).   In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct.  <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).  The court first examines plaintiff's claims in turn to determine whether plaintiff establishes a constitutional violation.

1.      Deliberate Indifference to Medical Needs

a.      Hepatitis C Treatment

In response to defendants' motion for summary judgment, plaintiff states:

> The Plaintiff wishes to dismiss all claims against Mr. Garrido because he has learned since being release that the latest medical protocol is not to use interferon therapy until after cirrhosis of the liver reaches level two (2) as determined by biopsy.  Plaintiff is still level one and does not meet the protocol for interferon therapy.

(Pl.'s Resp. (DE 52) p. 3.)  Because plaintiff concedes, in response to defendants' motion for summary judgment, that his claims against defendant Garrido are meritless, defendant Garrido is entitled to summary judgment as to plaintiff's claims against him.

9

b.    Denial of Wheelchair

Plaintiff alleges that defendant Smith and defendant Taylor acted with deliberate indifference to his serious medical needs in violation of the Fifth Amendment[11] because they failed to provide him with a wheelchair after his 2010 knee surgery.  In support of his claim, plaintiff states that a physician instructed him to stay off of his feet for a couple of weeks post-surgery and that plaintiff was authorized to use a wheelchair.  (Pl.'s Resp. (DE 52), p. 2.)  Plaintiff alleges that he requested a wheelchair when he returned to the Annex.  Id.  After consulting the computer, defendant Smith noted that there was no medical authorization for plaintiff to have a wheelchair.  (Id. pp. 2-3.)  Defendant Smith further refused plaintiff's request to contact the hospital or the physician.  (Id.)  Defendant Taylor, likewise, noted that there was no indication plaintiff was authorized for a wheelchair.  (Id.)

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  The first prong is an objective one – the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious" – and the second prong is subjective – the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (internal quotations omitted).

---

[11] Plaintiff was a pretrial detainee at the time he filed this action.  Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fifth Amendment, rather than under the Eighth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979).  However, as a practical matter, the contours of the Due Process Clause are coextensive with the substantive constitutional principles applied by the Eighth Amendment to convicted inmates.  See Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992).  Accordingly, plaintiff's Fifth Amendment Due Process claims will be analyzed under the Eighth Amendment.

"Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. See Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). A disagreement between an inmate and a physician regarding the appropriate form of treatment does not state a claim for deliberate indifference. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998); Sosebee v. Murphy, 797 F.2d 179, 181-82 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285, 1286 (4th Cir. 1977).

As admitted by plaintiff, both defendant Smith and defendant Taylor investigated whether medical staff assigned plaintiff a wheel-chair in the BOP computer system, but found no such authorization. (Pl.'s Resp. (DE 52), p. 2.) As members of the unit team, both defendant Smith and defendant Taylor were not responsible for inmate medical care or provision of inmate medications, medical devices, or medical equipment. (Taylor Aff. ¶ 2.) Nor does the unit team maintain inmate medical records files. (Id.) Rather, such care is provided by the medical staff. (Id.) Although plaintiff states that medical staff later informed him that he was authorized for a wheelchair, there is no evidence to suggest that defendant Smith or defendant Taylor knew that plaintiff had medical authorization for a wheelchair and disregarded such authorization. See Shakka, 71 F.3d at 167 ("[T]here is no evidence, either direct or circumstantial, to suggest that Warden Smith or Chief of Security Purnell had any knowledge that Shakka was deprived of his wheelchair; accordingly, there

11

is no evidence that they knew of and deliberately ignored Shakka's medical need which could support a finding of deliberate indifference.").

Although plaintiff states that defendant Smith refused to arrange for plaintiff to go to the medical Annex to get a wheelchair or to take plaintiff to see medical staff at the Carolina unit, the record indicates that it was not the responsibility of unit team members to procure medical equipment for inmates, but that an inmate must present written proof to the unit team in order to receive a medical accommodation. (Taylor Aff. ¶ 4.) Plaintiff did not have written proof of medical staff's authorization of a wheelchair. Plaintiff alleges in his complaint that sick call was cancelled for the week following his request for a wheelchair, but does not present evidence that defendant Smith and defendant Taylor were aware of the fact that he could not pursue his request for a wheelchair through sick call. Further, although plaintiff contends that he did not eat for several days because it was too painful to walk to "chow hall," plaintiff admits that he had the opportunity to use a wheelchair for dinner. (Compl. pp. 5-6.) Plaintiff also admits that he had crutches to assist with his mobility. (Pl's Resp. p. 2.) Based upon the foregoing, the court finds that plaintiff has not established that defendant Smith or defendant Taylor acted with deliberate indifference to his alleged need for a wheelchair. Because plaintiff has not established a constitutional violation, defendant Smith and defendant Taylor are entitled to qualified immunity for this claim.

   2.  Property claims

     a.  Defendants Fernandez, Hernandez, and Steinour

Plaintiff alleges that "[o]n September 12, 2008, all [civil] detainees in Maryland Unit were forced to go out to the recreation area while their rooms were searched for contraband. Several books and a calendar were taken from the plaintiff." (Compl. p. 4.) Plaintiff states that he asked

defendant Fernandez to provide him with a confiscation order listing the property taken, the reason the property was taken, and the name of the officer who took the property. Plaintiff also requested that defendant Fernandez send the property to plaintiff's home at plaintiff's expense. Fernandez promised to comply with plaintiff's requests, but a confiscation order was not provided and the property was not returned. Plaintiff seeks compensatory damages for this alleged due process violation.

The Fifth Amendment protects against deprivations of life, liberty, or property by the federal government without due process of law. See U.S. Const. Amend. V. A plaintiff may not obtain relief for the negligent or intentional deprivation of property if he has an adequate post-deprivation remedy available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984) (finding that unauthorized intentional deprivation of property by a state officer does not violate the due process clause if a meaningful post-deprivation remedy for the loss is available). Plaintiff has adequate post-deprivation remedies available through the Bureau of Prisons' Administrative Remedy Program, See 28 C.F.R. §§ 542.10-19, and through the small claims settlement permitted through 31 U.S.C. § 3723(a)(1). See Pink v. Lester, 52 F.3d 73, 77 (4th Cir. 1995); Kendall v. Balcerzak, 650 F.3d 515, 530 (4th Cir. 2011) (finding no procedural due process violation where adequate post-deprivation remedies exist); see also Plummer v. Debbo, No. 6:10-1224-MBS, 2011 WL 2036349, at *1 (D.S.C. May 24, 2011) (finding no due process violation for lost dentures where there are "adequate post-deprivation remedies available in the BOP Administrative Remedies Program or through the small claims settlement permitted through 31 U.S.C. § 3723(a)(1)").

Plaintiff asserts that he did not have an adequate post-deprivation remedy because he did not have a confiscation order, and could not file a tort claim, pursuant to the Federal Tort Claims Act.

13

Plaintiff, however, has not presented any evidence to establish that the BOP's Administrative Remedy Procedure was inadequate to address his loss of property[12] or that he could not proceed with a claim pursuant to § 3723(a)(1). Nor has plaintiff submitted any evidence to establish that any other available post-deprivation remedies were inadequate.[13] Thus, the court GRANTS the motion for summary judgment as to this claim and DISMISSES the claim without prejudice.

                b.      Defendants Ruffin and Steinour

Plaintiff alleges that on November 18, 2010, defendant Ruffin confiscated seventeen (17) of his magazines in violation of BOP procedures governing property confiscation. The record reflects that the confiscated magazines consisted of twelve (12) "American Curves" magazines and five "Heavy Metal" magazines. (Compl. Ex. E.) As noted above, on at least two other occasions, these magazines had been confiscated pursuant to BOP Program Statement § 5266.10 because they contained materials that were sexually explicit or that featured nudity. (Id. Exs. A, B.)

"Any magazines or publications that contain material describing or depicting sexual or erotic material, pornography, violence, rape, nude women, men, and children, or depiction of men, women, or children in suggestive situations, or pictures of children in general, may be proscribed" by a sex offender treatment program "due to legitimate treatment interests." Cooke v. Johns, No. 5:11-CT-3260-FL, 2013 WL 4500668, at * 7 (E.D.N.C. Aug. 21, 2013) (quoting Gilmore v. Kansas, No. 03-3222, JAR, 2004 WL 2203458, at *5 (D. Kan. Sept. 27, 2004)); see also, Mauro v. Arpaio, 188 F.3d

---

[12] Plaintiff generally alleges that he was denied grievance forms, but does not provide any factual support for this assertion. Additionally, the record reflects that plaintiff filed six administrative remedy requests/appeals, and thus, had access to the Bureau of Prisons Administrative Remedy Procedure. See (Cox Aff. (DE 19) ¶ 6.)

[13] The court previously stated that plaintiff requested punitive damages for the alleged confiscation of his property. Plaintiff, however, has not submitted any evidence to support a request for punitive damages. Further, plaintiff could have pursued his request for punitive damages in a North Carolina state conversion action. See N.C. Gen. Stat. § 1D-15(a).

1054, 1057 (9th Cir 1999) (finding county jail's regulation banning "sexually explicit materials," defined as "materials that show frontal nudity", was reasonably related to a legitimate penological purpose); Jones v. Salt Lake County, 503 F.3d 1147, 1152-1156 (10th Cir. 2007) (upholding a prohibition against sexually explicit material). Based upon the foregoing, plaintiff has failed to establish a constitutional violation, and Ruffin and Steinour are entitled to qualified immunity for this claim.[14]

To the extent plaintiff alleges that the magazine policy was not applied to inmates housed in the Carolina and Maryland units equally in violation of the Equal Protection Clause of the Fifth Amendment to the United States Constitution, his claim fails. The equal protection clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. It applies to the federal government through the Fifth Amendment. See, e.g., Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 211 n.1 (4th Cir. 2002). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001).

Here, plaintiff makes only conclusory allegations that the magazine policy at FCI Butner is being applied differently among detainees housed in the Carolina and Maryland units. Plaintiff further has not presented any evidence to support this claim. Thus, plaintiff has not established a constitutional violation and defendants are entitled to qualified immunity.

---

[14] Additionally, the Fifth Amendment due process deprivation of property claim also would be denied for the reasons set forth above with respect to plaintiff's deprivation of property claim against defendants Fernandez, Hernandez, and Steinour.

3.    Conditions of Confinement

a.    Annex Temperature

Plaintiff contends that from December 23, 2010, through January 3, 2011, the heat in the Annex, where he was confined for administrative segregation, stopped working. As a result, plaintiff states that he was exposed to freezing temperatures and suffered discomfort, pain, mental anguish, and fear. Plaintiff states that he informed defendants Hernandez and Steinour about the problem, but both defendants refused to take action. Plaintiff additionally states that he requested additional clothing, but that his request was denied.

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler, 989 F.2d at 1379 (quoting Wilson, 501 U.S. at 298). The first prong is an objective one – the prisoner must show that "the deprivation of [a] basic human need was *objectively* sufficiently serious" – and the second prong is subjective – the prisoner must show that "*subjectively* the officials act[ed] with a sufficiently culpable state of mind." Strickler, 989 F.2d at 1379 (internal quotations omitted).

The court begins with the subjective prong of the test-whether defendants acted with deliberate indifference to "freezing" temperatures in the segregation unit. Paynter, a member of the facilities department, attested to the workings of the HVAC system at FCI Butner and stated that only facilities department staff have the authority to adjust thermostats in the Annex. (Paynter Aff. ¶ 5.) Paynter further attested that there were two occasions on which the facilities department received complaints regarding the heat during the time period referenced by plaintiff. (Id. ¶¶ 9-10.) The record reflects that the facilities staff fixed the problem on both occasions. (Id.)

16

The record further reflects that Steinour contacted the facilities department to inform them of a problem with the heat in the Annex in December 2010. (Steinour Aff. ¶ 6(c)). Aside from the temporary temperature issue, there is no evidence that the HVAC system was malfunctioning or that it was inadequate from December 23, 2010, through January 3, 2011. Nor is there any evidence that plaintiff requested additional clothing, but that such a request was denied.[15] Therefore, plaintiff has not demonstrated that defendant Hernandez or defendant Steinour acted with deliberate indifference to the temperature in the Annex during the relevant time period.

  b.  Confinement in Segregation

The court now turns to plaintiff's allegations that his confinement in segregation violated his due process rights. Plaintiff alleges that temperatures in the segregation Annex were "freezing" from December 23, 2010 through January 3, 2011, and that he was denied any outdoor exercise. Plaintiff also alleges that prison officials practiced mental cruelty on him and terrorized him to make him think that he may never leave segregation. Finally, plaintiff contends that he was held in segregation sixty-five (65) days beyond his disciplinary sanction until he signed an agreement to participate in behavioral treatment in exchange for his release from segregation.

To prevail on a due process claim, an inmate first must demonstrate that he was deprived of "life, liberty, or property" by governmental action. Beverati v. Smith, 120 F.3d 500, 502 (4th Cir.1997). In Wolff v. McDonnell, 418 U.S. 539 (1974), the United States Supreme Court has set forth the minimal procedural protections that must be provided to an inmate in disciplinary proceedings in which the inmate loses good time, or otherwise is subjected to some comparable

---

   [15] Plaintiff provides only his conclusory allegation that he requested additional clothing. Plaintiff provided no factual support for this claim, including the date he made the request or to whom the requests were made. Thus, plaintiff failed to establish a constitutional violation. White v. White, 886 F.2d 721, 723 (4th Cir. 1989).

deprivation of a constitutionally protected liberty interest. Id. at 556–72. The due process procedures required by Wolff are not required unless the challenged discipline "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472 (1995). This due process analysis applies to civil detainees. See Miller v. Dobier, 634 F.3d 412, 415 (7th Cir. 2011) ("Disciplinary measures that do not substantially worsen the conditions of confinement of a lawfully confined person are not actionable under the due process clause, ... regardless of whether the confinement is criminal or civil."); Deavers v. Santiago, 243 F. App'x 719, 721 (3d Cir. 2007) (finding that the placement in segregation of a person civilly committed pursuant to a state Sexually Violent Predator Act does not violate the Due Process clause unless the deprivation is in some way extreme); Reeder v. Stauton Sheriff, No. 7:11cv00299, 2011 WL 2605047, *3 (W.D.Va. June 30, 2011), aff'd, 463 F. App'x 187 (4th Cir. Feb. 2, 2012). Accordingly, the court now determines whether the conditions while plaintiff was confined in segregation were atypical or extreme enough to implicate the due process clause.

As set forth above, the record reflects that plaintiff was temporarily exposed to cool temperatures while housed in the Annex, but that the HVAC system was adjusted to rectify the problem. This temporary discomfort is not sufficient to demonstrate that the conditions in segregation were atypical or extreme. See Rhodes v. Chapman, 452 U.S. 337, 348 ("[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort."). Nor does a temporary deprivation of outdoor exercise rise to the level of atypical or extreme. See Jones v. Kelly, No. 89-6651, 1990 WL 33936, at *1 (4th Cir. 1990) ("It is well settled that jails may provide space for indoor exercise and recreation as an alternative to outdoor recreational facilities, absent medical evidence demonstrating

a need for outdoor exercise."); <u>Makupson v. Powers</u>, No. 9:08-cv-0983, 2009 WL 1748712, at * 9

(D.S.C. June 18, 2009) (citing <u>Chavis v. Fairman</u>, No. 94-1503, 1995 WL 156599, at *5-6 (7th Cir.

Apr. 6, 1995)).  Additionally, plaintiff has not presented any evidence to substantiate the claim that

he was subject to mental cruelty.  <u>See</u> <u>White</u>, 886 F.2d at 723.  Based upon the foregoing, the court

finds that plaintiff has not established that the above-stated segregation conditions were atypical or

sufficiently extreme to implicate the due process clause.  <u>See, e.g.</u>, <u>Beverati</u>, 120 F.3d at 503-505

(4th Cir. 1997) (holding that administrative segregation for six months with vermin; human waste;

flooded toilet; unbearable heat; cold food; dirty clothing, linens, and bedding; longer periods in cell;

no outside recreation; no educational or religious services; and less food was not so atypical as to

impose significant hardship).

  The court now turns to plaintiff's contention that he was coerced into participating in the

BMP as a condition of his release from segregation.  The evidence in the record reflects that plaintiff

was recommended for the BMP after being found guilty of a disciplinary infraction for fighting with

another detainee over the television and because he had four additional incidents of fighting with

other detainees over the television.  (Hernandez Aff. ¶ 8(c)(2) and Ex. 1, p. 1.)  BOP staff

recommended the BMP program to plaintiff due to the fact that plaintiff continued to have conflicts

with other detainees despite the imposed disciplinary sanctions for his disciplinary conviction.  (<u>Id.</u>)

Based upon this evidence, the court finds that BOP staffs' recommendation that plaintiff be placed

in the BMP is reasonably related to the legitimate penological interest of facility security.  <u>See</u> <u>In</u>

<u>re Long Term Administrative Segregation of Inmates Designated as Five Percenters</u>, 174 F.3d 464,

469 (4th Cir.1999) ("Prison officials 'should be accorded wide-ranging deference in adoption and

execution of policies and practices that in their judgment are needed to preserve internal order and

discipline and to maintain institutional security.'") (quoting <u>Bell</u>, 441 U.S. at 547); <u>Overton v. Bazzetta</u>, 539 U.S. 126, 132 (2003) ("We must accord substantial deference to the professional judgment of prison administrators, who bear significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them."). Further, plaintiff has presented no evidence to support his claim of coercion. Thus, the court GRANTS defendants' motion for summary judgment for this claim.[16]

To the extent plaintiff seeks to allege a claim pursuant to the Equal Protection Clause of the Fifth Amendment to the United States Constitution because "other detainees had four (4) fight[s] in as many days yet no BMP was created for them", his claim fails because these allegations are insufficient to establish discriminatory intent. (Pl's Resp. p. 5.) Specifically, a detainee's allegation that another detainee received better treatment is not enough to establish an equal protection violation. <u>See</u> <u>McClesky v. Kemp</u>, 481 U.S. 279, 292 (1987); <u>Aguilar v. Kingston</u>, No. 05C1269, 2006 WL 3544636, at *3 (E.D.Wis. Dec. 8, 2006), <u>aff'd</u>, 224 F. App'x 526 (7th Cir. May 11, 2007). Nor does a detainee's allegation that another inmate received a lesser sanction for the same disciplinary infraction amount to evidence of discriminatory treatment. <u>See</u> <u>Mcclesky</u>, 481 U.S. at 292; <u>Gillam v. Holt</u>, 188 F. App'x 79, 81 (3rd Cir. 2006). Based upon the foregoing, the court finds that plaintiff failed to state a claim pursuant to the Equal Protection Clause.

## CONCLUSION

For the foregoing reasons, defendants' second motion for summary judgment (DE 44) is GRANTED. Plaintiff's mail censoring claim and his Fifth Amendment claim pertaining to the care

---

[16] Plaintiff also states that the alleged coercion to participate in the BMP claims violated the First Amendment. Plaintiff, however, has failed to sufficient facts or any evidence to support this claim. <u>See</u> <u>Anderson</u>, 477 U.S. at 257; <u>White</u>, 886 F.2d at 723.

20

for his broken wrist or rib are DISMISSED without prejudice. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 27th day of March, 2014.

LOUISE W. FLANAGAN
United States District Judge